May it please the Court, my name is Samuel Wong. I'm an assistant United States attorney in Sacramento, California. I represent the United States in this case. I'd like to reserve two minutes for rebuttal in this argument. The district court erred in reducing Austin's cocaine-based sentence from the party's agreed-upon sentence of 12 years to 10 years on the cocaine trafficking count, that was count one of the indictment, as the district court did not have jurisdiction to entertain Austin's motion for a sentence reduction under 18 United States Code section 3582C2. Let me just ask, why doesn't the pre-sentence report allow us to find that Austin's sentence was based on the guidelines? The pre-sentence report actually says that the guidelines are higher than what Austin received in this case. If you take a look at paragraphs 94 and 1-0- But the question was whether or not his sentence was based on the guidelines, not whether it was higher or lower. The pre-sentence report is not something that Justice Sotomayor said in the Freeman case that this Court or the lower court should refer to in deciding whether the party's plea agreement, provided that the sentence that the defendant received was one that was based upon the sentencing guideline in this case. And she said we should look only at the plea agreement. Is that correct? Yes. You should only look at the four corners of the plea agreement. You shouldn't be looking at negotiations. You shouldn't be looking at what the judge might have contemplated in deciding whether to accept or reject the party's plea agreement. And so you're really stuck with the four corners of the plea agreement. And if you look at this plea agreement, and I challenge defense counsel to show anything in the plea agreement that says that the 17-year sentence that Austin initially received was based on a sentencing guideline range that was later changed or reduced by the Sentencing Commission. In fact, if you take a look at what the district court said at the time of the original sentencing, it's very telling. At the original sentencing, the district court acknowledged that the parties agreed to a 17-year LID, whereas the guideline range is 228 months, and that's at the excerpt of record page 25. The Court explained that it was prepared to go to 17 years if that's the desire of the parties. Then in the nonpublic statement of reasons filed with the judgment in the criminal case on January 26, 2007, it confirms that the only reason that the district court downward departed was because of the parties' agreement to a 17-year sentence. Then you fast-forward a couple of years later at the time of the case. Kennedy, how was the 17 years computed? It was just a number that I came up with. I knew that the defense was 228 months. The guideline range was higher than the 17 years. It was 228 months versus 204 months that the defendant received under this binding plea agreement. It was just a number that I offered to the defense counsel. The defense counsel accepted it on behalf of his client. It was just a number to settle the case. Two years off the maximum. That's two years off the guidelines. It's actually, Your Honor, eight years off of the 300-year or 300-month sentence that the defendant would have received, and that would have been the guideline sentence as the minimum mandatories override the guidelines had the defendant gone to trial and lost. He received this benefit because the United States agreed to strike the information charging him with a prior information --- excuse me, prior drug trafficking element. Which would make it mandatory. Which would have increased the minimum mandatory from 10 years to 20 years on the drug count. So without the mandatory, it was 228 and you gave him 204, so that's 24 months, 2 years is what you threw in to make the deal. It was really an 8-year discount off of the 25 years. And the fact that the 204 months that the defendant did receive is 24 months less than the low end of the sentencing guideline range just shows you that the defendant did not receive a sentencing guideline range sentence. And if you take a look at what Judge Carlton said at the time that this case was on for re-sentencing, he said, the court said, like I always do, that the government and defendant agreed upon this. They know a heck of a lot more about the case than I'll ever know, sure. And then he continues, that doesn't answer the question, which is whether or not a guy would have gotten, there's a lot to be said for the government's view, the guy would have gotten 25 years. He got a reasonable discount. I don't even know how you arrived at 17 months. And then I corrected Judge Carlton by saying 17 years, and then Judge Carlton said, I'm sorry, 17 years. I don't know how that number was found. So if this number was a figure calculated by the sentencing guideline, the district court judge would have known how that number was found. It was not calculated based on the sentencing guideline range. It was just a number pulled out of the air, just as a means to offer to the defendant an incentive to plead guilty in this case. It was an 8-year discount off of the 25-year mandatory minimum sentence. And worse yet, at the time of re-sentencing, Judge – what Judge Carlton did was he erred even greater in that he reduced the defendant's cocaine-based trafficking sentence to a sentence that was even lower than the low end of the sentencing guideline range. He gave the defendant 120 months on count one, which was lower than the 140 months, which was the low end of the sentencing guideline range, even as amended or reduced by the Sentencing Commission. So where does that number come from? I would submit to you that that's an error also. Kennedy. Well, Judge Sotomayor, in our concurrence, which I think binds us, said that the – if the guideline range is evident from the terms of the agreement, then we can conclude that it was based on the guidelines. Is it your position that there's nothing in the agreement which shows that the guideline range was used in any way? Not to calculate the defendant's sentence, Your Honor. Nothing in the plea agreement. And I challenge the defense to show where in the plea agreement is there any language that allows – allowed the sentencing court or this Court to determine the defendant's sentencing guideline range. Is there anything that makes reference to his offense level or his anticipated criminal history category in that plea agreement? No, Your Honor. There's not? There's nothing in there. It's basically just both parties agree to recommend 17 years. The plea agreement was binding on the Court under paragraph 3 of the plea agreement entitled, or captioned, Conditional Plea Agreement, paragraph 3. The United States and defendant agree that in the event that the Court does not accept defendant's pleas of guilty to counts 1 and 2 of the indictment and sentence defendant to inter alia 17 years in the custody of the Attorney General as the incarceration portion of his sentence, this plea agreement shall be null and void. That's what bound the Court to this 17-year sentence. And that's the reason why the Court gave the defendant a 17-year sentence. And he said it a number of times. At the original sentencing, at the resentencing. That's why the Court came up with this – or went along with the 17 years. The Court did not know how the 17 years was calculated. Did you bring a motion to set aside the plea agreement? No, I have not, Your Honor. Instead, we took this appeal. Your Honor, what we could have done is to – What you could have done is, if he's – if the plea agreement has been violated, you could set it aside because your agreement says it's null and void unless he gets 17. And it allows the United States the option of refiling charges in this case. Of course. It allows the United States the option of refiling the 851 information charge in the defendant with a pardon. Of course. He's the defendant's reveling the dice on this one. But what I'm asking, I suppose, is at what point do you have to bring a motion to set aside the plea agreement in order to preserve your right that the agreement is null and void? I would suggest when this appeal is resolved, Your Honor. The important thing, though, the most important thing – I suppose what I'm asking, you better – you better come back to this. Have you waived this right by failing to move to set aside the plea agreement in the district court at the time the district court made its pronouncement? I would say no, Your Honor. We have raised that issue on – in this appeal. And I would say that the district court had no jurisdiction to reduce the sentence because the original sentence was not based on a sentence that was – based on a sentence in guideline range that was – Well, you say that. You indicated that you're pleased you'll come – be able to come because there's some nuances that you can explain out of your brief. This is one of the nuances I found. At what point is the governor – is the government required to take action on its position, if it's right – and that's a strong argument. I guarantee you that – that the plea bargain is null and void, but you have to move to set it aside, I suspect. At what point do you have to do that before it's waived, and why? Your Honor, the plea agreement – and I believe it's – if I could just have a moment to look at it. Paragraph 14 allows the United States to re-file certain charges. And it's – in the event the defendant's judgment and conviction and or sentence is vacated or otherwise modified, or his sentences are modified, the government has certain rights to do things. And it says, in the event that any such criminal – excuse me. It says that the United States may re-file any criminal charges that are the subject of this plea agreement and or re-file the information previously filed pursuant to 21 U.S.C. Section 851 that has been stricken under this plea agreement. In the event that any such criminal charge or information are re-filed, the defendant waives any defense based on the double jeopardy clause and or 18 U.S.C. Section 3282 that pertains to statute. I've heard that. And I don't know the answer to it. Obviously, the district judge would have denied the motion. But I'm – my concern is, is whether or not there's been a waiver by failure to make the motion at that time. You might argue that it would be a useless motion, because he's already made his determination. But that point wasn't reached in the briefs, and it was one of the nuances that I wanted to bring up to you, whether you'd given any thought to that issue. I suspect that if we agree with you, we can always send it back and let you make the motion. But I don't know that. If this case was sent back and Judge Carlton declined to enforce the plea agreement that requires a 17-year sentence, the United States would withdraw its motion to strike the information that was filed in this case, and the defendant would be looking at a minimum mandatory 25 years. I understand. And it may be that you can make that motion to set aside the plea agreement, which the district court has enforced in some fashion, when you get back. But I just don't know in my own mind how the government functions with it. You take the position the government has appealed, and I suspect that that's probably your answer, that you're going to go back and test the district judge's views on that issue before you set it aside, because it's to the benefit of the government as well as to have it sustained. But at any rate, that's an issue maybe that is going to come up later and can't be solved here. My belief would be that Judge Carlton would enforce the 17-year plea agreement if the court remanded this case back to him. Counsel, one last question. I'm puzzled by your statement that the plea agreement term of 17 years was arrived at independent of the Federal sentencing guidelines. In view of paragraph 10 of the plea agreement, defendant understands that the court must consult the Federal sentencing guidelines and must take into account when determining a final sentence. Isn't that pretty good evidence that this is based on the Federal guidelines? No, Your Honor, because if you take a look at Justice Sotomayor's concurring opinion, she says the mere fact that a sentencing judge looks at the sentencing guidelines to determine whether the offered plea agreement is reasonable is not enough to make the sentence one that is based on the sentencing guideline range. And that's in line with this Court's opinion in Bride that was cited by the government and to Poole O'Lough, which was also cited in the government's opening brief. All three of those cases stand for the proposition that the mere reference by the sentencing judge to look at the sentencing guidelines to determine whether a sentence is reasonable or not is not enough to make the sentence one that was based on a sentencing guideline range that was subsequently changed by the Sentencing Commission. Thank you very much. Thank you. Good morning. May it please the Court. My name is David Porter. I'm an assistant Federal defender from Sacramento, and I represent the appellee, Lorenzo Austin. The – this case would have been much different if the government were correct that this was a binding plea agreement. The plea agreement would have looked very, very different. It would have said somewhere that it's a C1C agreement. It would have said somewhere that the parties agree that a 17-year sentence is the appropriate disposition in this case, language from C1C. It would have said somewhere that the plea agreement is binding. It would have said somewhere that if the judge rejects the plea agreement, then the defendant can withdraw his plea. None of that was said in this agreement. Instead the government did say that unless 17 years is given, the plea agreement is null and void. Doesn't that show the intent of the parties? It is a very – that's the only thing that the government has pointed to, and it is very vague. It does not say that the defendant can withdraw from the plea. It says that the plea agreement is null and void. But that's the point, that both the defendant and the government have intervened to this agreement. Both the defendant and the government have agreed that unless it's 17 years, the agreement itself is null and void. Why isn't that sufficient? We're supposed to look at this like contract law. And I think that's the strongest point the government has. So I'd want to give you a chance to take a shot at them. Apparently you did convince the district judge. We did. And the reason why we convinced the very experienced district judge who did the sentencing in this case is that you have to look at the entire plea agreement, not just that one provision. So you look at these other provisions that don't even remotely resemble a C1C agreement, and then you get to this vague language about, well, you can – the plea agreement is null and void. It doesn't say anything about the plea itself. Well, it doesn't say anything about the offense level or the anticipated criminal history category. That's correct. And as Justice Bea pointed out, paragraph 10 explicitly – Judge, no justice. Did I say justice? No justice on this Court. Judge Bea pointed to paragraph 10 of the plea agreement that specifically alludes to the applicable guideline range. But more importantly, paragraph 11 of the plea agreement says the parties agree not to seek a departure, the government either upward or the defendant downward, from the applicable guideline range. What do you do with justice? And in this case, it isn't justice. As we used to say, there ain't no justice on the Ninth Circuit. Justice Sotomayor said mere reference to the guidelines doesn't mean that the guidelines are being applied. That's correct. And that is if this case comes under Freeman. And we explained in the supplemental brief that we filed last week, this case doesn't come under Freeman. Freeman is specifically where there is a Type C agreement. And for all the reasons that we listed, this is not a Type C agreement. So you don't even – Where in Freeman does it say that? That's the whole basis for the question presented, was whether in a C1C type – in a C1C case, does the – is the sentencing guideline range based on the parties' agreement, or is it based on the binding plea – based on the sentencing guideline range or the binding plea agreement? Binding plea agreement is under C1C. And what you're saying is unless the plea agreement says C1C, it ain't a C1C. And we have filed the – in our supplemental brief, we cited the leg case from the Sixth Circuit that's directly on point on that case. In that case, the plea agreement even said this was a C1C agreement. But when you read further, it said the parties recommend a certain sentence. The parties recommend a certain sentence. And the Sixth Circuit said, look, this is at least ambiguous because recommend is the opposite of a binding plea. And so when the plea agreement is ambiguous, you construe it against the drafter. And there is case law in this – case law is legend in this district – in this circuit that the ambiguity of the plea is held against the drafter.  So at the very most here, the plea agreement is ambiguous, and you have to construe that against the government. Do you contend that it must specifically cite whether it's a C or a B agreement? No, because in the leg case, it specifically cited C1C, and yet the court found reading the case. I had some problem with the leg case. Okay. But I'm going back to Justice Sotomayor's opinion, which, you know, she was the one who had been a district judge and had done 20 million of these. And it's a very practical approach that you take a look at that agreement, and she says even if there's mention of the plea, the guidelines, that that doesn't make the decision. So they don't mention whether it's a C or a B. They do mention the guidelines, and then they have this very important language that if you don't give 17 years, the contract's null and void. Now, it doesn't give us any other help than that, but what do you make, then, of give us 17 years or the contract is void, and both sides have agreed to that language? What's your best argument there? Well, the best argument there is that this is an ambiguous plea agreement. We have on the one hand the government's obligation on page, I think, 4 of the plea agreement. In bold letters, it says recommendation, and it never says this is a binding plea agreement. It says recommendation.  And the government is not coming in and telling me what I was going to do. They always phrased it recommendation. And then I would decide if I'm going to accept the plea agreement, then it becomes binding. Maybe they were being polite, Your Honor, but being in a contract is not the – a contract is not a place to be polite. It is a place to tell the district court specifically what the party's agreement is, and you either recommend something under B1B, which is not binding on the court, or you agree, you stipulate that this is the appropriate sentence in the case, that is a binding plea, that's a C1C agreement, that is not what we have in this case. Isn't that what that language does? You give 17 years or the contract's null and void? It is not. It is not what that – that provision says. What should it have said that was stronger? Well, because you have paragraph 11 of the – It's the other language that's the problem, then, the reference to the plea, to the sentencing guidelines. Not that particular statement that the government's relying on. I would say that the language that we're relying on is much more clear than the language that the government is relying on. We're relying on language, and Judge Carlson found this, and the abuse of discretion standard is the proper standard here. So you – Well, where do you suggest – I thought this was de novo. No, it is not. We cited both the Colson case and the Townsend case that Judge Bail was on – or Judge Wallace, you were on that case in Townsend. Oh, I remember. That said that the decision of a district court on a 3582C2 motion is reviewed for an abuse of discretion. Yes, but interpretation of a written contract, including a plea agreement, is a matter of law and is reviewed de novo. Your Honor, the – under the – under the Franklin case, 2010, Ninth Circuit case, the construction and interpretation of a plea agreement is a matter of fact and is reviewed for clear error by this Court. It is not reviewed de novo. Franklin? Franklin. The site on that, Your Honor, is 603, Fed 3rd, 652. I'll have to admit – And the jump site is – The government didn't give us a hand on this. We specifically in our rules say you're supposed to state what the standard review is. The government didn't help us on that in their brief, and so it's been a matter of concern to me, at least in the statement. There's no statement of standard review, which we always require because we always start with review. Now, there are some problems, for example, the Topolo case and the Bride case. And what do you feel is the strongest case to show something less than de novo review? Oh, very definitely the Franklin case that I just cited. The Franklin case. Well, the Franklin case was before the Freeman case. Isn't that correct? I think your citation was the 603, I think it's 600, Fed 3rd, 893. But at any rate, this case was before Justice Sotomayor's opinion. That's correct. Isn't that correct? Yes, that is correct. Why would that be binding here? Well, because Justice Sotomayor's concurring opinion and Freeman didn't talk at all about what the proper standard of review for a 3582 motion is. It doesn't even buy implication over Rule Franklin or Colson or Townsend. There are many, many cases under 3582. The McBride case, the government is relying on for de novo review, says that the construction of the statute, 3582 itself, is review de novo. We agree with that. And that was the issue in Bride. That is not the issue here. The issue here is the construction of the plea agreement. That's what Judge Carlton did, and that's what's entitled to deference. This was the judge that actually sentenced Mr. Austin. He should know very well what he based his sentence on, and he should know very well what the actions of the parties were that indicated what they did. But he really didn't base his sentence on the guidelines, did he? He went way below the guidelines. He went two years below the guidelines, which is a substantial 24 months. 15 percent, Your Honor. If, first of all, the government has been very honest about saying you just pulled it out of the air, the number just occurred to the government, that's a frightful proposition in itself. But if you look, where else could this really come from? What else could this be based on the sentence? Not on the statutory maximum. That's life. The sentence has no relation to life. The statutory minimum, 25 years, compared to 17 years what he got, that's a 33 percent reduction. It's implausible that there would be a 33 percent reduction for cooperation that the government itself said was not substantial or valuable. So what are we left with? We're left with the sentencing guidelines that have a 15 percent reduction. That's what Judge Carlton said, a 15 percent reduction. The applicable guideline range for cooperation that was attempted, but didn't turn out to be valuable or substantial. That's the most plausible. But how do you answer the question, but he didn't really apply the guidelines? Then why would paragraph 11 talk about not departing? And why would the judge say at sentencing that he is departing? That is guideline language. He departed. He departed. Why would he use guideline language? The government points to the statement of reasons. That's written. That does not have any bearing if the oral pronouncement is contrary to that. And what the oral pronouncement was, this is a departure. All right. Thank you. Thank you very much. We're over your time. We'll give you a minute for a rebuttal. If Judge Carlton departed in this case, there was no grounds for departure. There was no motion under section 5K1.1 of the sentencing guidelines. The court was without authority to depart. The reason the defendant's cooperation was addressed in paragraph 6 of the plea agreement, and that's the excerpt of record page 40, defendant acknowledged that he has been compensated in this plea agreement for his attempted cooperation to date, which the United States has determined in good faith not to be substantial and or valuable by the United States' agreement to strike the information previously filed pursuant to 21 U.S.C. section 851, charging defendant with a prior drug felony offenses conviction that would subject defendant to twice the minimum mandatory sentence for his conviction on count 1. That was what was given to him for his attempted cooperation. The important issue in this case is how was the defendant's sentence calculated? And that is what this Court needs to address. If the sentence was not based on a sentence, a sentencing guideline range that was subsequently lowered by the Sentencing Commission, the district court had no jurisdiction to act and to even hear the defendant's motion. And in this case, it's clear that the defendant's sentence was based on the party's agreement. The Court said so so many times. That's what the plea agreement says on its face. The government recommends 17 years, the defendant recommends 17 years, and it's binding upon the district court. This case is very similar to a case that was cited in the government's case called Vaughn, and that was cited in the government's reply brief at page 6, 7, and 8. And that was a district court opinion. Judge Patel ruled in that case that the plea agreement, very similar to ours, did not determine the defendant's sentence based on the sentencing guideline range, but it was more or less a plea agreement where the parties agreed to a specific sentence. And, Your Honor, I did want to point out that the United States did cite the standard of review, which is de novo in the Bride case. That's page 12 of the appellant's opening brief. And we discussed further standards of review for interpretation of the plea agreement. That's page 2 of the reply brief. And it is a de novo review because there was no extrinsic evidence in this case. Where there is extrinsic evidence, say, a fact-finding hearing where the district judge listens to witnesses and makes findings of fact, so it's a combination of a mixed question of law and fact, then it's reviewed for clear error. But in this case, the only document or the only evidence was the plea agreement. And there was no further extrinsic evidence taken in front of the district court. So this Court should review the lower court's interpretation of the plea agreement under strict contract interpretation, de novo review. Thank you, Mr. Wong. You might just bear in mind, counsel, my comment was referred to the standard review set out at the beginning separately as our rules require. I picked up your argument later on in your brief. I thought it was on page 12 of the first opening brief. I picked it up. Thank you.
judges: Wallace, Nelson, Bea